FILED ___ ENTERED
___ LODGED ___ RECEIVED

AUG 29 2019

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RESA McCRAY, et al.

    Plaintiffs,

v.

HOUSING AUTHORITY OF
BALTIMORE CITY, et al.

    Defendants.

Civil Action No. RDB-18-2271

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs, Resa McCray and Charles Smith, Individually and as Personal Representatives of the Estate of Minor C.S., and Parents and Next Friends of C.S., bring a twelve-count Complaint against the Housing Authority of Baltimore City ("HABC"); Paul T. Graziano ("Graziano"), Individually and in his Official Capacity as Former Baltimore Housing Commissioner and Former Executive Director of the Housing Authority of Baltimore City; Michael Braverman ("Braverman"), Individually and in his Official Capacity as Baltimore Housing Commissioner and Former Acting Housing Commissioner and Commissioner of the Department of Housing and Community Development and Acting Executive Director; and Janet Abrahams ("Abrahams"), Individually and in her Official Capacity as Executive Director, Housing Authority of Baltimore City (collectively, "Defendants"). (Third Am. Compl., ECF No. 16.) Plaintiffs allege that Defendants are liable for personal injuries and for the wrongful death of a minor child, C.S., allegedly caused by willful disregard and neglect in permitting mold to grow in a public housing unit in which the family lived. (*Id.*) The Plaintiffs have been permitted to amend their original Complaint on two occasions. (ECF Nos. 6, 16.)

Currently pending before this Court is Defendants' Motion to Dismiss Complaint or in the Alternative for Summary Judgment (ECF No. 20). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, Defendants' motion shall be GRANTED because Plaintiffs have failed to plausibly allege a timely claim, and this case shall be DISMISSED WITH PREJUDICE.

## BACKGROUND

### I. Factual Background

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Plaintiffs Resa McCray ("McCray") and Charles Smith ("Smith") were the parents of the decedent, C.S. (ECF No. 16 at ¶¶ 10, 11.) McCray, Smith, and C.S. were residents at McCulloh Homes, which is a public housing project in Baltimore, Maryland, operated by the Housing Authority of Baltimore City ("HABC"). (*Id.* at ¶ 22.) The family moved into the McCulloh Homes apartment on or about September 4, 2012, when C.S. was eleven years of age. (*Id.* at ¶¶ 19, 22.) Plaintiffs allege that C.S. had been diagnosed with asthma but had never been hospitalized up to that time. (*Id.* at ¶ 23.)

Plaintiffs allege that for the first two to three years during which they lived in the apartment, they did not notice any mold conditions in the apartment. (*Id.* at ¶ 24.) However, at some point after that, they allege having observed that the roof and/or ceiling began to leak and show signs of water damage, they noticed a distinctive odor, and they noticed that the wall in their closet was being blackened by mold. (*Id.* at ¶ 25.) McCray and Smith allege that they

submitted official requests for repairs, known as 'work orders' to the HABC, but no repairs were made. (*Id.* at ¶¶ 26-27.) They further allege that their next-door neighbor, with whom they shared the wall on which the mold was growing, had also observed the mold and the neighbor's minor daughter who also suffered from asthma, suffered an acute asthma attack in the apartment and died within days of the attack. (*Id.* at ¶ 28.) During this time, C.S.'s asthma became more severe. (*Id.* at ¶ 29.)

Plaintiffs allege that on May 1, 2014, C.S.'s doctor recommended that they "have any water leaks fixed and remove any mold," and on August 20, 2014, after C.S. has been hospitalized, an Asthma Action Plan included the observation that C.S.'s asthma was triggered by mold. (*Id.* at ¶¶ 30, 31.) C.S. was hospitalized again on August 29, 2014 with an acute asthma attack, and the doctor recommended that C.S. "[c]onsider staying at a relative's home until the fungus is out of your home or until you are able to move." (*Id.* at ¶ 33.) Between September 30, 2014 and October 14, 2014, C.S. was treated for her asthma at the Johns Hopkins Pediatric Respiratory Clinic after another acute attack, and she was hospitalized again in May and June 2015. (*Id.* at ¶¶ 34, 35.) These hospitalizations and doctor visits caused C.S. to miss school and her parents to miss work. (*Id.* at ¶¶ 34, 37.) C.S. died on July 31, 2015 after suffering an acute asthma attack on July 24, 2015. (*Id.* at ¶¶ 1, 19.) McCray and Smith allege that they were too poor to move out of the apartment, and they continue to live there today even though the mold is still growing. (*Id.* at ¶¶ 1, 47.)

Plaintiffs allege that the HABC knew or should have known about the mold conditions in the apartment because ample notice was provided through repeated complaints not only by the Plaintiffs but also from other residents of the building. (*Id.* at ¶ 38.)

3

## II. Procedural History

Plaintiffs filed the instant lawsuit on July 25, 2018 against the Mayor and City Council Baltimore City; Paul T. Graziano, Former Baltimore Housing Commissioner; and Michael Braverman, Baltimore Housing Commissioner, alleging 19 causes of action ranging from violations of the Fair Housing Act to wrongful death.[1] (Compl., ECF No. 1.) On August 15, 2018, Plaintiffs filed their first Amended Complaint, adding the Housing Authority of Baltimore City as a defendant and striking the Mayor and City Council of Baltimore City as a defendant. (ECF No. 6.) About a month later, on September 14, 2018, Plaintiffs filed a Second Amended Complaint, adding Janet Abrahams, Executive Director, Housing Authority of Baltimore City as a defendant. (ECF No. 9.) Plaintiffs also modified Graziano's title to include Former Executive Director of the Housing Authority of Baltimore City, and modified Braverman's title to include Former Acting Housing Commissioner and Commissioner of the Department of Housing and Community Development. (*Id.*) Further, Plaintiffs dropped seven causes of action, alleging only twelve causes of action.[2] (*Id.*) Plaintiffs again amended their Complaint on November 7, 2018, and this Third Amended Complaint is the operative

---

[1] Specifically, Count I – Fair Housing Act, Disability-based Discrimination in Violation of the Fair Housing Act Amendments; Count II – Rehabilitation Act Disability Discrimination Claim, Disability-based Discrimination in Violation of Section 504 of the Rehabilitation Act of 1973; Count III – Americans with Disabilities Act Title II Disability Discrimination Claim, Disability-based Discrimination in Violation of Title II of the Americans with Disabilities Act of 1990; Count IV – Americans With Disabilities Act Title V Disability Discrimination Claim, Interference in Violation of Title V of the American with Disabilities Act of 1990; Count V – Civil Rights Act, Due Process; Count VI – Civil Rights Act Equal Protection; Count VII – Maryland Constitution Article 24 Due Process Claim; Count VIII – Maryland Constitution Article 24 Equal Protection; Count IX – Intentional Infliction of Emotional Distress; Count X – Breach of the Implied Warranty of Habitability; Count XI – Breach of Lease Agreement; Count XII – Unfair Trade Practices in Violation of Consumer Protection Act; Count XIII – Negligent Hiring, Training, Retention & Supervision; Count XIV – Federal Unconstitutional Pattern and Practice; Count XV – Maryland "*Longtin* Claim" for Unconstitutional Pattern and Practice; Count XVI – Negligence; Count XVII – Negligence Wrongful Death; Count XVIII – Survival Action; and Count XIX – Declaratory Judgment.

[2] Specifically, Plaintiffs dropped prior Counts IV, IX, XII, XV, XVII, XVIII, and XIX.

complaint. (ECF No. 16.) In the Third Amended Complaint, Plaintiffs modified Graziano's and Braverman's titles, adding "Individually and in his Official Capacity as . . ." Braverman's title was further modified to include Acting Executive Director. (*Id.*)

The Third Amended Complaint (ECF No. 16) alleges the following causes of action:

- Count I – Fair Housing Act, Disability-based Discrimination in Violation of the Fair Housing Act Amendments

- Count II – Rehabilitation Act Disability Discrimination Claim, Disability-based Discrimination in Violation of Section 504 of the Rehabilitation Act of 1973

- Count III – Americans with Disabilities Act Title II Disability Discrimination Claim, Disability-based Discrimination in Violation of Title II of the Americans with Disabilities Act of 1990

- Count IV – Civil Rights Act Due Process

- Count V – Civil Rights Act Equal Protection

- Count VI – Maryland Constitution Article 24 Due Process Claim (By Resa McCray and Charles Smith in Their Individual Capacities Only)

- Count VII – Maryland Constitution Article 24 Equal Protection (By Resa McCray and Charles Smith in Their Individual Capacities Only)

- Count VIII – Breach of the Implied Warranty of Habitability (By Resa McCray in her Individual Capacity Only)

- Count IX – Breach of Lease Agreement (By Resa McCray in her Individual Capacity Only)

- Count X – Negligent Hiring, Training, Retention & Supervision (By Resa McCray and Charles Smith in Their Individual Capacities Only)

- Count XI – Federal Unconstitutional Pattern and Practice

- Count XII – Negligence (By Resa McCray and Charles Smith in Their Individual Capacities Only)

Plaintiffs each demand Ten Million Dollars in compensatory damages, punitive damages in an amount to be determined by a jury, costs and attorneys' fees, injunctive relief in the form of an order that all health or safety concerns in their home be immediately abated, and such other relief deemed appropriate. (*Id.*)

On November 30, 2018, Defendants responded with the pending Motion to Dismiss Complaint or in the Alternative for Summary Judgment (ECF No. 20). For the reasons that follow, this Court shall GRANT Defendants' motion because Plaintiffs have failed to allege timely claims, and this case shall be DISMISSED WITH PREJUDICE.

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). To satisfy Rule 8(a)(2), a complaint need not include "detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Hall v. DirectTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017).

Generally, a motion to dismiss filed under Rule 12(b)(6) cannot reach the merits of an affirmative defense, such as whether a plaintiff's claim is time-barred. *Goodman v. Praxair*, Inc., 494 F.3d 458, 464 (4th Cir. 2007). It is possible to evaluate such a motion, however, if all the facts necessary to the affirmative defense are clearly alleged on the face of the complaint. *Id.*; accord *Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017).

## ANALYSIS

Defendants contend that each of Plaintiffs' claims are time-barred by their applicable statutes of limitation. (Defs.' Mot., ECF No. 20.) Additionally, Defendant asserts that Plaintiffs fail to state a claim on each cause of action and fail to state any claim of wrongdoing by Graziano, Braverman, and Abrahams. (*Id.*) This Court shall first address whether the claims are time-barred, and if there are any timely claims, it will then consider whether those claims are plausibly alleged.

**I.  Claims are Time-Barred**

**A.  Count I – Fair Housing Claim**

Private civil actions under the Fair Housing Act ("FHA") are subject to a two-year statute of limitations. *See* 42 U.S.C. § 3613. Specifically,

> An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this subchapter, whichever occurs last, to obtain appropriate relief with respect to such discriminatory housing practice or breach.

*Id.* at (a)(1)(A).

7

In their response, Plaintiffs appear to concede that this claim is time-barred. In any event, Plaintiffs clearly state that they do not intend to pursue this claim. (Pls.' Resp. 21 n. 5, ECF No. 24.) Accordingly, Count I shall be dismissed.

### B. Counts II through XII – Three Year Statute of Limitations

The parties agree that the remaining causes of action are subject to a three-year statute of limitations. (*See* Mot. Mem. 9-10, ECF No. 20-1; Pls.' Resp. 20-21, ECF No. 24.)[3] Defendants argue that the discovery rule makes Plaintiffs' claims time-barred, and Plaintiffs did not properly name Defendants on the initial complaint such that the amended complaints do not relate back under Federal Rule of Civil Procedure 15(c). (Mot. Mem. 11-12, ECF No. 20-1.)

Plaintiffs argue that that they were not on notice of their cause of action against the Defendants until the untimely death of their daughter because "they were not informed of the toxicity of the mold within their home and otherwise had no 'knowledge sufficient to prompt a reasonable person to inquire further.'" (Pls.' Resp. 20, ECF No. 24 (quoting *Pennwalt Corp. v. Nasios*, 550 A.2d 1155, 1163 (1988).) Plaintiffs also argue that the amendments all relate back to the date of filing the original pleading. (*Id.* at 14-20.) Further, Plaintiffs assert that their causes of action are subject to the continuing violations doctrine, which aggregates repeated wrongful acts, failures to act, or other violative behaviors such that the limitations

---

[3] Plaintiffs federal claims are silent on the respective statute of limitations, so courts defer to state law. *See Wilson v. Garcia*, 471 U.S. 261, 266 (1985) ("When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so."); *see also* Maryland Code Ann. Cts. & Jud. Proc. § 5-101 ("A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.").

8

period begins to run on the collected misconduct only when the defendant ceases its improper conduct. (*Id.* at 21 (citing *Nat'l Advert. Co. v. City of Raleigh*, 947 F.3d 1158, 1167 (4th Cir. 1991)).)

Plaintiffs filed the original complaint on July 25, 2018, so the critical date from a limitations perspective is July 25, 2015. This Court shall address each of the raised issues in turn.

### 1. Discovery Rule

To determine when the three years begins, Maryland recognizes the "discovery rule," which holds that "a cause of action accrues when a plaintiff in fact knows or reasonably should know of the wrong." *Duffy v. CBS Corp.*, 182 A.3d 166, 181 (Md. 2018) (quoting *Georgia-Pacific Corp. v. Benjamin*, 904 A.2d 511, 520-21 (Md. 2006)). "This standard . . . does not require actual knowledge on the part of the plaintiff, but may be satisfied if the plaintiff is on 'inquiry notice.'" *Dual Inc. v. Lockheed Martin Corp.*, 857 A.2d 1095, 1104 (Md. 2004) (citing *Am. Gen. Assurance Co. v. Pappano*, A.2d 1212, 1219 (Md. 2003); *Doe v. Archdiocese of Washington*, 689 A.2d 634, 644 (Md. Ct. Spec. App. 1997)). A plaintiff is on inquiry notice when the plaintiff "possesses 'facts sufficient to cause a reasonable person to investigate further, and . . . [that] a diligent investigation would have revealed that the plaintiffs were victims of . . . the alleged tort.'" *Id.* (quoting *Pennwalt Corp. v. Nasios*, 550 A.2d 1155, 1159 (1988)). "[N]otice of facts, and not the law, is the trigger for commencement of the limitations period." *Anne Arundel Cnty. v. Halle Dev., Inc.*, 971 A.2d 214, 229 (Md. 2009).

Plaintiffs allege that they knew of the mold and dampness problems in their apartment by mid-2014 and were advised by physicians of the mold danger on May 1, 2014, again on

9

August 20, 2014, and on August 29, 2014, it was recommended: "Consider staying at a relative's home until the fungus is out of your home or until you are able to move." (*See* Third Am. Compl. ¶¶ 24-25, 30-33, ECF No. 16.) Plaintiffs also allege that before C.S.'s death, they learned that their next-door neighbor with whom they shared the wall on which the mold was growing had "also observed mold growth on that wall" and their minor daughter had suffered an acute asthma attack in the apartment and died within days of the attack. (*Id.* at ¶ 28.) Additionally, Plaintiffs had filed complaints and work orders regarding the mold, and C.S. died on July 31, 2015 from an asthma attack caused by mold in the apartment. (*Id.* at ¶¶ 1, 19, 26.) Plaintiffs own allegations are inconsistent with their assertion that they were not informed of the toxicity of the mold within their home until their daughter died. The allegations on the face of the Complaint clearly establish that the Plaintiffs were on inquiry notice by at least May 1, 2014 and no later than August 29, 2014. C.S.'s death occurred on July 31, 2015. Plaintiffs were certainly on notice before the critical date of July 25, 2015, so Plaintiffs' claims of personal injury and discrimination will be barred unless the continuing violation exception to the general rule of accrual can be applied to save some or all of Plaintiffs' claims from application of the statute of limitations.

### 2. Continuing Violation Doctrine

"[T]he 'continuing harm' or 'continuing violation' doctrine . . . tolls the statute of limitations in cases where there are continuing violations." *Litz v. Maryland Dept. of Env't*, 76 A.3d 1076, 1089 (Md. 2013) (quoting *MacBride v. Pishvaian*, 937 A.2d 233, 240 (Md. 2007) *abrogated in part by Litz*, 76 A.3d 1076). Under the continuing harm doctrine, "each new repetition of the wrong creates further liability . . . and a new statute of limitations begins to

10

run after each wrong perpetuated." *SPS Ltd. P'ship, LLLP v. Sparrows Point, LLC*, 122 F. Supp. 3d 239, 245 (D. Md. 2015) (citing *Litz*, 76 A.3d at 1089). It requires, however, "that a tortious act—not simply the continuing ill effects of prior tortious acts—fall within the limitation period." *MacBride*, 937 A.2d at 240. Although a cause of action for a continuous injury is not cut off by the limitations period, damages for recovery are limited by the statutory period. *Chevron U.S.A. Inc. v. Apex Oil Co., Inc.*, 113 F. Supp. 3d 807, 820 (D. Md. 2015). Importantly "[b]are assertions that there is a continued course of conduct among [Defendants] is not enough to toll the statute of limitations under the continuing harm theory." *Bacon v. Arey*, 40 A.3d 435, 469 (Md. Ct. Spec. App. 2012).

Plaintiffs contend that the continuing violation doctrine applies to Counts VI through X and XII. (Pls.' Resp. 22, ECF No. 24 (citing Third. Am. Compl. ¶¶ 47, 98-99, ECF No. 16).) In Counts VI and VII, McCray and Smith allege that they were denied due process of law and equal protection under Article 24 of the Maryland Constitution. (Third Am. Compl. ¶¶ 96-112.) In Counts VIII and IX, McCray alleges a breach of the implied warranty of habitability and a breach of the lease agreement. (*Id.* at ¶¶ 113-21.) In Count X, McCray and Smith allege negligent hiring, training, retention, and supervision of the maintenance staff responsible for monitoring and repair of the public housing unit. (*Id.* at ¶¶ 128-33). In Count XII, MCray and Smith allege negligence in the performance of duty to maintain the public housing unit. (*Id.* at ¶¶ 141-43.)

Whether the Plaintiffs' alleged acts may be considered a new occurrence or simply the continuing ill effects of a prior occurrence is dependent on the nature of the wrongful conduct and harm alleged under the particular cause of action. For example, in *MacBride*, the plaintiff

11

argued that her Consumer Protection Act claims involved an ongoing harm, in particular, the deteriorating condition of her apartment due to mold and the landlord's inadequate response in ameliorating the conditions. 937 A.2d at 235, 240-41. The Maryland Court of Appeals concluded that although she may have suffered from an ongoing harm, her complaints were merely the "continuing ill effects from the original alleged violation," and not "a series of acts or course of conduct . . . that would delay the accrual of a cause of action to a later date." *Id.* at 241. Importantly, a jury had found that the complained-of acts, the misstatements made by the landlord, were made at the beginning of the lease, and there were no ongoing unlawful acts. *Id.* The Court also held that "the continuation of events theory does not toll the statute of limitations, because there was no fiduciary relationship between the parties" since the landlord-tenant relationship is a contractual relationship. *Id.* at 235, 240.[4] Similarly in *Bacon v. Arey*, the Maryland Court of Special Appeals found the continuing harm theory inapplicable where the land-locked plaintiff alleged that the defendant was continuing to block his access to his property. 40 A.3d at 469. Rather, the access was allegedly blocked in the past, and plaintiff was alleging that he was still incurring the effects of that act. *Id.*

In *First Virginia Banks, Inc. v. BP Exploration & Oil, Inc.*, 206 F.3d 404, 406-07 (4th Cir. 2000), the United States Court of Appeals for the Fourth Circuit held that Virginia's continuing tort doctrine did not apply to the continuous migration of petroleum hydrocarbons from the site of a former gasoline station onto the plaintiff's land where the tank from which the contaminants leaked was removed in 1986. In that case, the bad acts ended on the removal

---

[4] The Court later clarified that the discovery rule does not apply to the continuing violation doctrine. *See Litz*, 76 A.3d at 1090 (noting the Court's ultimate holding in *MacBride* did not rely on the discovery-rule *dictum* because the Court correctly held that the continuing harm doctrine was not applicable in that case).

12

of the contaminants even though the harm from the contaminants continued. *Id.* Of course, unlawful conduct may be manifested not only by the commission of an act, but also by omission, such as where a duty to ameliorate exists. *See, e.g., Litz,* 76 A.3d 1076 (applying the doctrine in a nuisance and negligence case, where the defendant had a continuous, ongoing duty to control the discharge of contaminated ground and surface water). If, on the other hand, mere inactivity invariably satisfies the "continual unlawful acts" test, every unremedied violation of the law could be cast as a continuing violation. *See Fitzgerald v. Seamans,* 553 F.2d 220, 230 (D.C. Cir. 1977) ("[T]he mere failure to right a wrong and make plaintiff whole cannot be a continuing wrong which tolls the statute of limitations, for that is the purpose of any lawsuit and the exception would obliterate the rule.").

As is evident from these few examples, the distinction between continually recurring violations and continuing effects can be subtle. With regard to Counts VI through X and XII, McCray and Smith allege generally that the "violations at issue are continuing in nature." (Third Am. Compl. ¶ 47, ECF No. 16.) Under Counts VI-X, they allege that the mold "created and continues to cause" serious medical conditions and illnesses for McCray and Smith, (*id.* at ¶ 98), "caused a continuing negative impact on the Plaintiffs' health," (*id.* at ¶ 100), "the mold condition commenced, developed, grew, and continues to grow as a result of Defendants' failure to remedy," (*id.* at ¶ 118), the mold "is a current and ongoing state of the home," (*id.* at ¶ 125). These allegations clearly refer to effects rather than wrongful actions, and all the allegations can certainly be characterized as bare assertions. There are no allegations that could be interpreted as a "continuing violation allegation" under Counts VII or XII. In sum,

13

Plaintiffs simply fail to plausibly allege facts demonstrating how the continuing violation doctrine saves each of their claims from being barred by the statute of limitations.

Accordingly, Plaintiffs attempt to invoke the continuing violation doctrine fails. The Plaintiffs' claims are subject to the discovery rule and are time-barred.

### C. Timely Notice under the Local Government Tort Claims Act

The Local Government Tort Claims Act ("LGTCA") imposed notice requirements for certain claims against counties or municipalities, including housing authorities such as HABC. *Mitchell v. Housing Authority of Baltimore City*, 26 A.3d 1012, 1020-21 (Md. Ct. Spec. App. 2011); Maryland Code Ann. Cts. & Jud. Proc. § 5-301 *et seq.* The LGTCA notice requirement states, in pertinent part, that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 1 year after the injury." CJP § 5–304(b).

Plaintiffs gave notice under the LGTCA on December 6, 2017, preserving claims arising after December 6, 2016. (*See* Pls.' Resp. 36, ECF No. 24.) Defendants note that the letter focused on the injuries suffered by C.S. and related injuries suffered as a result of her injuries and death, but it did not indicate that McCray or Smith suffered independent injuries. (Mot. Mem. 28, ECF No. 20-1.) Plaintiffs assert that the state law claims from December 6, 2016 forward are preserved by the notice given and should not be dismissed. However, as this Court concluded above, Plaintiffs claims are subject to the discovery rule, so Plaintiffs have failed to plausibly allege claims arising after December 6, 2016.

## D. Amendments Under Rule 15 (c)

Rule 15(c) governs whether an amended pleading "relates back to the date of the original pleading." Fed. R. Civ. P. 15(c)(1). When adding a new party, the amendment only relates back if:

(1) "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," Fed. R. Civ. P. 15(c)(1)(B)-(C);

(2) the new party "received such notice of the action that it will not be prejudiced in defending on the merits," Fed. R. Civ. P. 15(c)(1)(C)(i);

(3) the new party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity," Fed. R. Civ. P. 15(c)(1)(C)(ii); and

(4) requirements three and four are satisfied "within the period provided by Rule 4(m)," Fed. R. Civ. P. 15(c)(1)(C).

Regarding the second requirement, actual notice to a closely related corporation that shares attorneys with the new party may be sufficient, *Goodman v. Praxair, Inc.*, 494 F.3d 458, 474-75 (4th Cir. 2007), and a court should inquire into prejudice even where notice is established, *see e.g., Robinson v. Clipse*, 602 F.3d 605, 609 (4th Cir. 2010). As to the third requirement, the United States Court of Appeals for the Fourth Circuit has held that Rule 15(c) is not satisfied when "the failure to name the prospective defendant in the original complaint was the result of a fully informed decision." *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 372 (4th Cir. 2014) (quoting *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 552

(2010)). In other words, "a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties" is not a "mistake" enabling relation back under Rule 15(c). *Tatum*, 761 F.3d at 372 (citing *Krupski*, 560 U.S. at 549). "[W]hen relation back is required to satisfy the statute of limitations, the burden is on the plaintiff to prove that Rule 15(c) is satisfied." *Covey v. Assessor of Ohio Cty.*, 666 F. App'x 245, 248 (4th Cir. 2016) (citing *W. Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1200 (4th Cir. 1989)).

Plaintiffs original complaint named the Mayor and City Council Baltimore City, which was later dropped. (Compl., ECF No. 1.) It also named Paul Graziano and Michael Braverman as Former Baltimore Housing Commissioner and Baltimore Housing Commissioner, respectively. (*Id.*) The Housing Authority of Baltimore City ("HABC") was added for the first time on August 15, 2018, and Janet Abrahams was added for the first time on September 14, 2018. (First Am. Compl., ECF No. 6; Sec. Am. Compl., ECF No. 9.) Defendants assert that HABC and Abrahams did not receive sufficient notice for the amendments to relate back to the filing date of the first complaint, July 25, 2015. (Mot. Mem. 10-11, ECF No. 20-1.) Defendants also assert that the claims against Graziano and Braverman, although they were named in the initial complaint, were not named as employees of HABC and no facts were alleged in the initial complaint to alert them to expect a claim against them in an HABC capacity or an individual capacity. (*Id.* at 11-12.)

This Court has concluded that by mid-2014, the Plaintiffs were on inquiry notice of their injuries and their claims related to C.S.'s death. Therefore, discussion related to whether the claims relate back to the July 25, 2015 filing date of the first complaint are moot.

16

## II. Failure to State Plausible Claims

Additionally, Plaintiffs fail to plead minimal elements for many of their causes of action. For example, to prevail under Title II of the ADA or Section 504 of the Rehabilitation Act, "a plaintiff must show that she was excluded from participation in, or denied the benefits of, a program or service offered by a public entity, or subjected to discrimination by that entity." *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). Claims under Section 504 and Title II may be pursued under three distinct grounds: "(1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations." *A Helping Hand, LLC v. Baltimore Cty.*, 515 F.3d 356, 362 (4th Cir. 2008).

Accepting, as Plaintiffs have pleaded, that C.S.'s asthma was a qualifying disability, it is not sufficient to present a plausible claim because Plaintiffs have not alleged facts to establish that an accommodation was either requested or denied, nor have they alleged facts to demonstrate a disparate impact or intentional discrimination or disparate treatment. Therefore, Plaintiffs fail to state a plausible claim under Counts II and III. Additionally, Plaintiffs cannot hold the individual defendants liable under either the ADA or Section 504 of the Rehabilitation Act. *See Brown v. Dep't of Public Safety and Correctional Services*, 383 F. Supp. 3d 519, 552 (D. Md. 2019) (citing cases).

Also, "[t]he first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty." *Bailey-El v. Housing Authority of Baltimore City*, 686 F. App'x 228, 229 (4th Cir. 2017) (quoting *Andrew v. Clark*, 561 F.3d 261, 269 (4th Cir. 2009)). "A property interest exists when one has a legitimate claim of entitlement to a right arising from such sources as state statutes, local ordinances, and employment contracts."

17

*Id.* (quoting *Bunting v. City of Columbia*, 639 F.2d 1090, 1093 (4th Cir. 1981)). Plaintiffs assert the right to bodily integrity. (Pls.' Resp. 26, ECF No. 24 (citing *Albright v. Oliver*, 510 U.S. 266, 272 (1994)).)

In *Albright*, the United States Supreme Court stated: "As a general matter, the Court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended. The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Id.* at 271-72 (citation omitted). Plaintiffs' claim—to be free from being subjected to dangerous and life-threatening conditions at the hand of the Defendants by denial of requests for repair—is not in the same category as those recognized by courts.

Nor have Plaintiffs been deprived of procedural due process on the basis of their complaints being unaddressed. Plaintiffs had and have procedural rights through their property lease and access to the courts through state landlord-tenant and property law. *See, e.g.*, Maryland Real Property § 8-211 (describing the duty of landlords to repair or eliminate serious conditions and defects of residential dwelling units and providing tenants with a mechanism for ensuring the repair of dangerous conditions).

Further, Plaintiffs' claim of a violation of equal protection fails because there are no allegations of similarly situated persons who were given the resolutions that Plaintiffs claim they were denied. *See Martin v. Duffy*, 858 F.3d 239, 252 (4th Cir. 2017) ("To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result

of intentional or purposeful discrimination." (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001))).

In sum, not only have Plaintiffs failed to assert a timely claim, but after four attempts, they also failed to allege plausible claims. Plaintiffs' Third Amended Complaint shall be dismissed with prejudice as untimely.

## CONCLUSION

For the foregoing reasons:

1. Defendants' Motion to Dismiss Complaint or in the Alternative for Summary Judgment (ECF No. 20) is GRANTED.
2. Plaintiffs' Third Amended Complaint is DISMISSED WITH PREJUDICE.
3. A separate Order follows.

Dated: August 29, 2019.

*/s/ Richard D. Bennett*

Richard D. Bennett
United States District Judge